Daniel G. Albebt, J.
Plaintiff moves to set aside the judicial sale of premises 3 University Place, Great Neck, conducted on June 5, 1972, and to have a de novo sale conducted because of an admittedly unilateral mistake made by the plaintiff. The premises were purchased by 'the plaintiff at the foreclosure sale for the sum of $61,000, with a credit for the amount of some $24,000 representing the sum owed plaintiff on its second mortgage, and subject to a first mortgage in the amount of approximately $21,000 and prior judgments of record in the *145 apparent amount of approximately $11,000. (Such outstanding judgments previously totalled some $25,000, but have allegedly been reduced to $11,000 by defendant Sarnoff.)
The judgment of foreclosure dated April 14, 1972 clearly and unambiguously provided that the sale was to be made “ subject to ” these prior liens; that if plaintiff purchased the premises it would be credited with the amount of its mortgage; and that any surplus over such amount, less certain other specified items, would be paid to the Referee to be disposed of in a surplus money proceeding. The sale was conducted accordingly on June 5, 1972, over one year ago, and the Referee’s report, dated June 26, 1972 and prepared by the plaintiff’s attorneys, has never been confirmed. Such report, challenged by defendants and admitted to be erroneous by plaintiff and the Referee, credits plaintiff with the amounts of the first mortgage and prior judgment liens, in addition to its own mortgage, and indicates a deficiency of some $13,000. In fact, all parties concur that under the clear and unambiguous terms of the aforesaid judgment, also prepared by plaintiff’s attorneys, the sale has resulted in a surplus of almost $36,500 which should be disposed of in a surplus money proceeding.
Prior to the sale plaintiff prepared the judgment which provides for no such credits, but rather for the surplus money proceeding, and the judgment was signed by Mr. Justice Harnett on April 14,1972; following the sale plaintiff prepared the Referee’s report which, erroneously provides for such credits and erroneously reports a deficiency; and now plaintiff claims that it “ was led to believe [by whom?] that if it bid an amount in excess of the aggregate of the said prior [first] mortgage, judgments and unpaid taxes, it would be credited * * * with said aggregate amount against the purchase price ”. According to plaintiff, this is the mistake, committed by plaintiff and by the Referee, which equity should excuse by directing a new sale at a substantially lesser amount: ‘ ‘ 7. There is no question that the judgment of sale and the Referee’s report were prepared by my office. This is typical in foreclosure proceedings. Unfortunately, as set forth in my moving affidavit, we went on the assumption that, inasmuch as the property was being sold "subject to the prior first mortgage held by the Whitestone Savings & Loan Association and the various prior judgments, plaintiff would receive credit for same against the purchase price as in an ordinary real estate transaction. We neglected to observe the provision of the judgment that any monies bid over and above the amount of *146 our judgment in foreclosure would be applied to surplus money proceedings. This was an honest mistake for which we accept both the blame and the responsibility.” Plaintiff asserts that defendants Sarnoff cannot be prejudiced “ since the aggregate of the prior liens and plaintiff’s lien is far in excess of the value of the Property and under no circumstances will there be any surplus monies available to them as the fee owners of the Property.” This is of course a non sequitur, since in any event the deficiency would be greater, but in point of fact there may well be a surplus, however small, payable to the Sarnoffs after all the liens are satisfied.
Can or should equity relieve plaintiff of its admittedly unilateral error, self-imposed and self-executed, in light of the completely unambiguous judgment prepared by plaintiff and its admittedly voluntary conduct in purchasing the premises for $61,000? The court might be inclined to do so were the defendants not to be prejudiced thereby and had the plaintiff approached the court with clean hands, so to speak, but neither condition obtains herein.
,First of all, the sale took place over one full year ago; the Referee’s report to confirm is dated June 26, 1972; no motion has been made by plaintiff in the ensuing year to confirm said report; defendant’s attorney called plaintiff’s attorney last July and asked when such motion would he made, and indicated that defendants felt the report to be erroneous (as now admitted) and wished to challenge same. The attorney in Mr. Keller’s office who was handling the matter left “in the beginning of July” and the confirmation remained unattended to, espite the communication from defendants’ attorney to Mr. Keller himself. The property has remained vacant for over a year since the Sarnoffs were evicted and has admittedly deteriorated physically and in value; concededly the property cannot be sold today for the same amount as it would have, realized a. year ago; and clearly the matter cannot be restored to the status quo that existed at the time of the foreclosure sale last June. Accordingly, it is mainfest that (1) defendants Sarnoff will indeed be prejudiced by a de novo sale (for either the deficiency would be greater or the surplus smaller), and (2) plaintiff approaches the court after a lapse of one year, and this motion was not made until almost 10 months aftér the sale and the request by defendants’ attorney to move to confirm the Referee’s report. Such delay in moving to correct plaintiff’s unilateral error renders the mistake unrectifiable and constitutes laches on the part of the plaintiff which prc *147 eludes the court from exercising equity in plaintiff’s favor so as to direct a new sale of the property in issue.
Plaintiff overdramatizes the extent of its error: if indeed there is a surplus money proceeding with a fund of some $36,000, most of the judgment and mortgage liens which seem to total approximately $32,000 will presumably be satisfied, thereby eradicating the liens about which plaintiff so bitterly complains. Accordingly, plaintiff will have purchased the premises for about $61,000 on June 5,1972, a sum which appears to fall within the range of the premises ’ then fair market value (in regard to which no valid evidence is before me and no finding made).
For all of the above reasons plaintiff’s motion to set aside the judicial sale and to order a de novo sale of the premises is denied in all respects. There is no motion before me to confirm the Referee’s report, and since all parties agree that the report of June 26, 1972 is incorrect the Referee is directed to prepare a new report and to serve and file same within 20 days of the date a copy of the order entered hereon is served upon him. Upon the filing of such report both plaintiff and defendants Sarnoff shall proceed with dispatch to have the report confirmed and to complete the surplus money proceeding to be held in accordance with the provisions of the judgment of April 14, 1972.